IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ESTATE OF HENRY MISSICK aka
ANTHONY ALEXANDER JONES by and
Through Personal Representative
OWEN GOODWYNE                                                         PLAINTIFF

VERSUS                                      CIVIL ACTION NO. 5:23-cv-21-KS-BWR

CORECIVIC, INC.                                                        DEFENDANT

## ANSWER AND AFFIRMATIVE DEFENSES

COMES NOW CoreCivic, Inc. ("CoreCivic"), by and through counsel, and answers the Complaint (the "Complaint") filed by the Estate of Henry Missick aka Anthony Alexander Jones by and through personal representative Owen Goodwyne (the "Estate" or "Plaintiff"), as follows:

## FIRST DEFENSE-ANSWER

CoreCivic responds to the allegations of the Complaint, paragraph by paragraph as follows:[1]

1.      CoreCivic admits that, on or about December 17, 2020, U.S. Immigration and Customs Enforcements ("ICE") detainee Anthony Alexander Jones ("Mr. Jones") died while incarcerated at the Adams County Correctional Center ("ACCC"), located in Natchez, Mississippi. CoreCivic denies all remaining allegations in paragraph 1 of the Complaint.

2.      CoreCivic admits that it is a private corporation that owns and operates ACCC, a correctional facility.

3.      Denied.

---

[1] The Complaint's headings are included in this Answer for clarity only and are not intended as admissions. To the extent any of the Complaint's headings contain express or implied allegations against CoreCivic, CoreCivic denies such allegations and all allegations of wrongdoing.

4.    CoreCivic admits that ACCC medical staff performed, among additional medical assessment and treatment, an electrocardiogram ("EKG") test upon Mr. Jones on December 17, 2020. CoreCivic further admits that, as part of the medical care provided, ACCC medical staff placed Mr. Jones under monitoring in the ACCC medical unit for a period of time. CoreCivic denies all remaining allegations in paragraph 4 of the Complaint.

5.    CoreCivic admits that ACCC medical staff checked Mr. Jones's vital signs multiple times as part of the medical care of Mr. Jones on December 17, 2020. CoreCivic admits that, during such observation, Mr. Jones became unresponsive, and ACCC medical staff initiated emergency protocols. CoreCivic admits that ACCC medical staff "initiated cardiopulmonary resuscitation ('CPR') and other life saving measures" upon Mr. Jones. CoreCivic admits that Mr. Jones died on December 17, 2020. CoreCivic currently lacks information or knowledge sufficient to admit or deny the precise time at which Mr. Jones "fell unconscious"; therefore, denied. CoreCivic denies all remaining allegations in paragraph 5 of the Complaint.

6.    Denied.

**JURISDICTION AND VENUE**

7.    CoreCivic admits that, at the time of the filing of the Complaint, the Circuit Court of Adams County, Miss. could properly exercise subject matter jurisdiction over this action pursuant to Miss. Const. art. VI, § 156; admits that venue could properly lie in the Circuit Court of Adams County, Miss. pursuant to Miss. Code Ann. § 11-11-3; and admits that the alleged acts, omissions, and events that gave rise to the Complaint occurred in Adams County, Miss. CoreCivic further admits that, at the time of the filing of the Complaint, the Circuit Court of Adams County,

Miss. could properly exercise personal jurisdiction over CoreCivic in this action. CoreCivic denies all remaining allegations in paragraph 7 of the Complaint.[2]

## PARTIES

8.      Upon information and belief, CoreCivic admits that the Estate of Henry Missick aka Anthony Alexander Jones was established in Florida's 17th Judicial Circuit Court on April 16, 2021. CoreCivic also admits that this lawsuit is brought by Owen Goodwyne and admits upon information and belief that Mr. Goodwyne is the Estate's personal representative. CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations asserted in paragraph 8 regarding whether Mr. Jones "was born Henry Missick but used the named Anthony Jones for most of his life"; therefore, denied.

9.      CoreCivic admits that it owns and operates ACCC, as well as "one other" correctional facility in Mississippi. CoreCivic admits that, pursuant to a contract with ICE, CoreCivic owned and operated ACCC on December 17, 2020, the date of the subject incident. CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations asserted in paragraph 9 regarding legal agreements between "Adams County" and ICE; therefore, denied.

## FACTS

### Anthony Jones' History

10.     CoreCivic admits, upon information and belief, that Mr. Jones was born on March 29, 1969, in the Bahamas. CoreCivic currently lacks information or knowledge sufficient to admit or deny the remaining allegations asserted in paragraph 10 of the Complaint; therefore, denied.

11.     Upon information and belief, admitted.

---

[2] For the reasons articulated in the Notice of Removal, CoreCivic has established that jurisdiction and venue are now proper in the U.S. District Court for the Southern District of Mississippi, Western Division.

12.     CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations asserted in paragraph 12 of the Complaint; therefore, denied.

13.     Upon information and belief, admitted.

14.     CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations asserted in paragraph 14 of the Complaint; therefore, denied.

**CoreCivic's History**

15.     Denied.

16.     Denied as stated. The U.S. Department of Justice Office of the Inspector General ("DOJ OIG") report linked in paragraph 16, n. 3 of the Complaint is a report dated June 26, 2018, not "August of 2016" as stated in paragraph 16. The DOJ OIG report(s) speak for themselves. CoreCivic denies all remaining allegations in paragraph 16 of the Complaint and all allegations of wrongdoing.

17.     Denied as stated. The pleadings of the referenced civil action speak for themselves. CoreCivic denies all remaining allegations in paragraph 17 of the Complaint and all allegations of wrongdoing.

18.     Denied as stated. The report linked in paragraph 18, n. 4 of the Complaint speaks for itself. CoreCivic denies all remaining allegations in paragraph 18 of the Complaint and all allegations of wrongdoing.

19.     Denied as stated. The report linked in paragraph 18, n. 4 of the Complaint, and further described in paragraph 19 of the Complaint, speaks for itself. CoreCivic denies all remaining allegations in paragraph 19 of the Complaint and all allegations of wrongdoing.

20.     Denied. The reports linked in paragraph 20, n. 6 of the Complaint speak for themselves. CoreCivic denies all remaining allegations in paragraph 20 of the Complaint and all allegations of wrongdoing.

**[ACCC]'s History**

21.     CoreCivic admits that ACCC opened in July 2009. CoreCivic admits that CoreCivic was formerly known as Corrections Corporation of America. CoreCivic admits that CoreCivic formerly contracted with the U.S. Bureau of Prisons to use ACCC as a federal prison.

22.     CoreCivic admits that an incident occurred in 2012 at ACCC in which one correctional officer died and others were injured. The DOJ statement linked in paragraph 22, n. 7 of the Complaint speaks for itself. The article linked in paragraph 22, n. 8 of the Complaint speaks for itself. CoreCivic denies all remaining allegations in paragraph 22 of the Complaint and all allegations of wrongdoing.

23.     The article linked in paragraph 23, n. 9 of the Complaint speaks for itself. The publications cited in paragraph 23, n. 10 of the Complaint speak for themselves. CoreCivic denies all remaining allegations in paragraph 23 of the Complaint and all allegations of wrongdoing.

24.     Denied. The publications cited in paragraph 24, n. 11 of the Complaint speak for themselves. CoreCivic denies all remaining allegations in paragraph 24 of the Complaint and all allegations of wrongdoing.[3]

---

[3] The as-filed Complaint skips from paragraph 24 on page 5 to paragraph 32 on page 6; however, paragraphs 25 through 31 appear out of order on page 18 of the as-filed Complaint. For clarity, CoreCivic will respond to the numbered paragraphs in numerical order.

**Mr. Jones' Death at [ACCC]**

25.     CoreCivic admits that ACCC medical unit nurse practitioner Stacy Cook, FNP-C ("NP Cook"), conducted an initial health appraisal of Mr. Jones on October 15, 2019, and that such appraisal noted that Plaintiff had high blood pressure.[4]

26.     CoreCivic admits only that NP Cook ordered an EKG to be performed on Mr. Jones in October 2019 and that such EKG was performed on or around October 28, 2019.

27.     CoreCivic admits only that Mr. Jones was seen by providers, including but not limited to Sharon Collins, M.D. ("Dr. Collins"), in the ACCC medical unit cardiac chronic care clinic on November 12, 2019. CoreCivic further admits that medical records from Mr. Jones's November 12, 2019 appointment reflect that Mr. Jones underwent an EKG on October 28, 2019. CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations concerning all specific issues Dr. Collins may have "reviewed" or allegations concerning the medical results of the EKG; therefore, denied.

28.     CoreCivic admits that the November 12, 2019 records from Mr. Jones's medical appointment reflect that Dr. Collins ordered Mr. Jones to undergo a blood pressure check once per week for eight weeks, among other follow-up care directives. CoreCivic currently lacks information or knowledge sufficient to admit or deny whether Dr. Collins failed to refer Mr. Jones

---

[4] CoreCivic denies the allegation in paragraph 25, n. 12 that "CoreCivic employed all [ACCC] medical staff and guards referenced in this complaint during all times relevant to the [C]omplaint." Upon information and belief, CoreCivic admits that the following ACCC staff members identified in the Complaint were, as of Dec. 17 2020, employees of CoreCivic of Tennessee, LLC: Stacy Cook (Compl. ¶¶ 25-26), Dr. Collins (*id.* ¶¶ 27, 28, 36, 37, 40, 45), Williams (*id.* ¶ 30), Guard Murphy (*id.* ¶¶ 32-33), Lt. Lowe (*id.* ¶ 32), Guard Barnes, (*id.* ¶ 33), Guard Detrick Windling (*id.* ¶ 34), RN Brown (*id.* ¶¶ 35-36, 45), Lt. Moore (*id.* ¶ 35), LPN Kenishia Coffie (*id.* ¶¶ 38-39), and RN Tenner (*id.* ¶ 39). Upon information and belief, CoreCivic denies that the individual identified as Guard Winey (*id.* ¶ 30) was an ACCC staff member on Dec. 17, 2020, and further denies that Guard Winey was an employee of CoreCivic, Inc. or CoreCivic of Tennessee, LLC, on Dec. 17, 2020.

to a cardiologist or to "take any other significant action"; therefore, denied. CoreCivic denies all remaining allegations in paragraph 28 of the Complaint and all allegations of wrongdoing.

29.     CoreCivic admits only that Mr. Jones's ACCC medical records reflect that Mr. Jones, while detained at ACCC, presented to at least one facility medical appointment complaining of nosebleeds and sinus pain.

30.     CoreCivic currently lacks information or knowledge sufficient to admit or deny whether Mr. Jones "first complained of chest pains" to an unidentified "detained person" on December 17, 2020, and lacks information or knowledge sufficient to admit or deny the precise time Mr. Jones allegedly made such complaint; therefore, denied. CoreCivic denies that Mr. Jones's "first opportunity to report his symptoms" was during ACCC's "scheduled facility-wide count of detained persons." To the extent paragraph 30 contains additional allegations to which CoreCivic must respond, CoreCivic denies all remaining allegations and all allegations of wrongdoing.

31.     CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations in paragraph 31; therefore, denied.

32.     CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations in paragraph 32; therefore, denied.

33.     CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations in paragraph 33 concerning a conversation between "guard Murphy" and "guard Barnes"; therefore, denied. CoreCivic is unable to admit or deny the remaining vague and ambiguous allegation concerning CoreCivic "policy and practice," but denies that any CoreCivic "policy and practice" is improper and further denies that any CoreCivic "policy and practice" caused the subject incident that gave rise to this lawsuit.

34.     CoreCivic currently lacks information or knowledge sufficient to admit or deny allegations concerning Mr. Jones's actions in his housing unit; whether such actions were "obvious signs of distress"; whether "guards did not allow Mr. Jones to leave the unit" until "count had finished"; or whether guard Detrick Windling escorted Mr. Jones to the ACCC medical unit. Therefore, those allegations are denied. CoreCivic admits only that Mr. Jones arrived to the ACCC medical unit on December 17, 2020, by or before 7:39 a.m. To the extent paragraph 34 contains additional allegations to which CoreCivic must respond, CoreCivic denies all remaining allegations and all allegations of wrongdoing.

35.     CoreCivic admits that Mr. Jones arrived to the ACCC medical unit on December 17, 2020, by or before 7:39 a.m. and that Mr. Jones was seen by ACCC medical provider(s), including Registered Nurse Brittany Brown ("Nurse Brown"). CoreCivic further admits that Mr. Jones's medical records reflect that Mr. Jones stated to Nurse Brown that he had experienced "burning in [his] chest and in both of [his] arms" and that such symptoms had onset three hours before. CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegation that Nurse Brown was the "charge nurse on duty" or the allegations regarding what Mr. Jones "reported" to ACCC "Lieutenant Moore"; therefore, denied.

36.     CoreCivic admits that Mr. Jones underwent an EKG on December 17, 2020, at approximately 7:54 a.m. CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegation that Nurse Brown was the provider who "completed" the EKG or the allegations concerning the medical results of the EKG; therefore, denied. CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegation as to whether and how the ACCC "medical computer system alerted Dr. Collins"; therefore, denied. CoreCivic denies all remaining allegations in paragraph 36 of the Complaint and all allegations of wrongdoing.

37.     CoreCivic admits only that Mr. Jones's ACCC medical records reflect that, at approximately 8:01 a.m., Nurse Brown noted that she had consulted with and received orders from Dr. Collins for "2L O2/NC, 324 mg ASA, 0.4 mg Nitro, 30cc Mylanta, EKG." Further, CoreCivic admits that Mr. Jones's ACCC medical records reflect that the plan of care was to monitor Mr. Jones in the ACCC medical unit for an hour prior to releasing Mr. Jones back to his housing unit. CoreCivic currently lacks information or knowledge sufficient to admit or deny the remaining allegations in paragraph 37 of the Complaint; therefore, denied.

38.     CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegation as to whether Licensed Practical Nurse Kenisha Coffie ("LPN Coffie") "escorted" Mr. Jones; therefore, denied. CoreCivic denies that Mr. Jones was placed "out of the medical unit" while under observation on December 17, 2020. CoreCivic denies the allegation, whether express or implied, that Mr. Jones was not "easily observable" by ACCC medical staff on December 17, 2020. To the extent paragraph 38 contains additional allegations to which CoreCivic must respond, CoreCivic denies such allegations and all allegations of wrongdoing.

39.     CoreCivic currently lacks information or knowledge sufficient to admit or deny the vague allegation regarding the requirements of an unspecified CoreCivic policy. CoreCivic admits that the ACCC medical waiting room is "observable" through various means, including but not limited to security cameras and windows. CoreCivic denies that ACCC staff failed to monitor Mr. Jones on December 17, 2020. CoreCivic admits that LPN Coffie and Registered Nurse Latoya Tenner ("Nurse Tenner") took Mr. Jones's vital signs but denies that Mr. Jones's vital signs were taken *only twice* at 8:18 a.m. and 8:26 a.m. while he was under medical observation. CoreCivic denies that Mr. Jones reported that he "still felt burning in his right arm" after 8:26 a.m. CoreCivic currently lacks information or knowledge sufficient to admit or deny whether nurses "exited the

waiting room immediately after taking Mr. Jones's vital signs to attend to other duties"; therefore, denied.

40.    CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations in paragraph 40 of the Complaint; therefore, denied.

41.    CoreCivic denies the allegation that, "[a]fter 8:26 a.m. [on December 17, 2020], all CoreCivic staff left Mr. Jones alone in the waiting room" and that "no CoreCivic employee maintained any visual observation of" Mr. Jones. CoreCivic currently lacks information or knowledge sufficient to admit or deny the remaining allegations in paragraph 41 of the Complaint; therefore, denied.

42.    CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations in paragraph 42 of the Complaint; therefore, denied.

43.    CoreCivic admits that an ACCC staff member confirmed at or before 9:10 a.m. on December 17, 2020, that Mr. Jones was not responsive. CoreCivic currently lacks information or knowledge sufficient to admit or deny the remaining allegations in paragraph 43 of the Complaint; therefore, denied.

44.    CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations in paragraph 44 of the Complaint; therefore, denied.

45.    CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations in paragraph 45 of the Complaint; therefore, denied.

46.    CoreCivic admits only that ACCC medical staff initiated CPR on Mr. Jones at approximately 9:22 a.m., applied an automated external defibrillator ("AED") at approximately 9:24 a.m., and administered epinephrine at approximately 9:27 a.m.

47.     CoreCivic admits that ACCC medical staff continued efforts to revive Mr. Jones until a paramedic arrived to Mr. Jones's bedside and assumed care at approximately 9:56 a.m.

48.     Admitted.

49.     CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations in paragraph 49 of the Complaint; therefore, denied.

50.     CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations in paragraph 50 of the Complaint; therefore, denied.

51.     CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations in paragraph 51 of the Complaint; therefore, denied.

52.     CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations in paragraph 52 of the Complaint; therefore, denied.

53.     CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegations in paragraph 53 of the Complaint; therefore, denied.

### Standards and Directives

54.     CoreCivic currently lacks information or knowledge sufficient to admit or deny allegations in paragraph 54 concerning unspecified industry standards or allegations concerning a "service agreement" and "other contracts" between non-parties; therefore, denied. Further, CoreCivic's contractual obligations and/or duty of care are questions of law; thus, there is no requirement to respond to allegations in paragraph 54 concerning what contracts, standards, or plans CoreCivic "was required to follow." CoreCivic refers all questions of law to the Court.  To the extent a response is deemed required, CoreCivic denies that it failed to follow relevant or applicable contractual or common law duties at any time relevant to the alleged acts described in the Complaint.

55. The referenced standard cited in paragraph 55, n. 13 of the Complaint speaks for itself. Paragraph 55 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

56. The referenced standard cited in paragraph 56, n. 14 of the Complaint speaks for itself. Paragraph 56 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

57. The referenced standard cited in paragraph 57 of the Complaint speaks for itself. Paragraph 57 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

58. The referenced standard cited in paragraph 58 of the Complaint speaks for itself. Paragraph 58 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

59. The referenced standard cited in paragraph 59, n. 15 of the Complaint speaks for itself. Paragraph 59 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

60. The referenced standard cited in paragraph 60 of the Complaint speaks for itself. Paragraph 60 does not contain any allegation against CoreCivic; therefore, no response is required.

To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

61.     The referenced standard cited in paragraph 61 of the Complaint speaks for itself. Paragraph 61 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

62.     The referenced standard cited in paragraph 62, n. 16 of the Complaint speaks for itself. Paragraph 62 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

63.     The referenced Quality Assurance Surveillance Plan ("QASP") cited in paragraph 63 of the Complaint speaks for itself. Paragraph 63 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

64.     The referenced QASP cited in paragraph 64 of the Complaint speaks for itself. Paragraph 64 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

65.     The referenced QASP cited in paragraph 65 of the Complaint speaks for itself. Paragraph 65 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

66.     The standard cited in paragraph 66, n. 17 of the Complaint speaks for itself. Paragraph 66 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

67.     The standard cited in paragraph 67, n. 18 of the Complaint speaks for itself. Paragraph 67 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

68.     The standard cited in paragraph 68, n. 19 of the Complaint speaks for itself. Paragraph 68 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

69.     CoreCivic currently lacks information or knowledge sufficient to admit or deny the vague and ambiguous allegation that unspecified "Mississippi healthcare regulations … governed medical care" at ACCC; therefore, denied.

70.     The "Minimum Standards" and the regulations cited in paragraph 70 of the Complaint speak for themselves. The allegation that "[ACCC]'s medical unit is a hospital" for purposes of the cited regulations is a legal conclusion, to which no response is required. CoreCivic refers all questions of law to the Court. To the extent a response is deemed required, CoreCivic currently lacks information or knowledge sufficient to admit or deny the allegation that ACCC's medical unit is defined as a "hospital" for purposes of the cited regulation; therefore, denied. The remainder of paragraph 70 of the Complaint does not contain any allegation against CoreCivic;

therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

71.     The cited regulation speaks for itself. Paragraph 71 of the Complaint does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

72.     The cited regulation speaks for itself. Paragraph 72 of the Complaint does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

73.     The cited regulations speak for themselves. Paragraph 73 of the Complaint does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

74.     The policy cited in paragraph 74, n. 20 of the Complaint speaks for itself. Paragraph 74 does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

75.     The cited regulation speaks for itself. Paragraph 75 of the Complaint does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

76.     The cited regulation speaks for itself. Paragraph 76 of the Complaint does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

77.     The cited regulation speaks for itself. Paragraph 77 of the Complaint does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

**DHS OIG Report**

78.     Upon information and belief, CoreCivic admits that, on July 14, 2021, DHS OIG released the report cited in paragraph 78, n. 21 of the Complaint. The report speaks for itself. Otherwise, paragraph 78 of the Complaint does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

79.     The report referenced in paragraph 79, and cited in paragraph 78 n. 21, of the Complaint speaks for itself. CoreCivic currently lacks information sufficient to admit or deny the medical conclusions reached in the report, as summarized in paragraph 79 of the Complaint; therefore, denied. Otherwise, paragraph 79 of the Complaint does not contain any allegation against CoreCivic; therefore, no response is required. To the extent a response is deemed required, CoreCivic denies any and all allegations of wrongdoing.

**Notice**

80.     CoreCivic admits only that, on December 16, 2022, CoreCivic received by process server written correspondence from an attorney named Jeremy Jong entitled "Letter of Intent to Sue" (the "Letter"). The Letter purports to "serve as a formal notice that the Estate of Henry Missick intends to commend a lawsuit against [CoreCivic] due to" the alleged incident that occurred at ACCC on December 17, 2020, involving Mr. Jones. The Letter states an "effective date" of December 17, 2022. CoreCivic denies the allegation that such Letter was "consistent with Miss. Code Ann. § 15-1-36(15)" and reserves all objections and defenses with regard to the sufficiency of the notice provided.

**Claim for Relief**

81.     Paragraph 81 realleges and incorporates by reference all allegations in the foregoing paragraphs of the Complaint; therefore, CoreCivic adopts and incorporates all of the foregoing responses as if fully set forth herein.

82.     Denied.

83.     CoreCivic admits only that it owes certain duties of care to individuals within its custody; however, CoreCivic's legal duty of care is a question of law. CoreCivic refers all questions of law to the Court. To the extent paragraph 83 contains additional allegations to which CoreCivic is required to respond, CoreCivic denies all allegations of wrongdoing.

84.     Denied.

85.     Denied.

**Damages**

86.     CoreCivic admits only that Mr. Jones died on December 17, 2020. CoreCivic admits that Plaintiff seeks over $10,000 in damages and that Miss. Code Ann. § 11-1-59 required Plaintiff to include such allegation. However, CoreCivic denies all remaining allegations asserted paragraph 86 of the Complaint and specifically denies that CoreCivic is liable for the described damages and denies that CoreCivic is liable to Plaintiff whatsoever.

87.     Denied.

**Prayer for Relief**

88.     CoreCivic admits that Plaintiff seeks the forms of relief stated in the unnumbered paragraph beginning "WHEREFORE, Plaintiff requests…" and listed in subparagraphs (a) through (d). However, CoreCivic denies that Plaintiff is entitled to the relief sought and denies that CoreCivic is liable to Plaintiff whatsoever.

## GENERAL DENIAL

CoreCivic denies each and every allegation asserted in the Complaint that is not expressly admitted herein. To the extent CoreCivic has failed to respond to any allegation contained in Plaintiff's Complaint, CoreCivic hereby denies any and all such allegations and denies all allegations of wrongdoing.

## SECOND DEFENSE

CoreCivic affirmatively pleads all defenses to which it may be entitled under Miss. Code Ann. § 11-7-13.

## THIRD DEFENSE

The actions of ACCC staff members were objectively reasonable under the circumstances and they were acting in good faith and without malice.

## FOURTH DEFENSE

The actions or inactions alleged on the part of CoreCivic were not the proximate cause of any injuries, losses and damages to Mr. Jones.

## FIFTH DEFENSE

CoreCivic alleges that the alleged injuries, losses and damages, if any, were the result of the negligence, recklessness or intentional acts of someone other than CoreCivic. CoreCivic affirmatively pleads Miss. Code Ann. § 85-5-7 for an allocation of fault, if any, as to any individuals or entities (whether they be parties, settling parties, or non-parties) whose negligence or actions/inactions may have contributed to cause the alleged damages.

## SIXTH DEFENSE

If facts introduced at trial show that the direct, proximate, and/or sole cause of the injuries alleged, if any, was Mr. Jones's own conduct or negligence then any amount that Plaintiff claims

as compensatory damages (if the claims for such amounts are not entirely barred) must be diminished proportionately as set forth in Miss. Code Ann. §§ 11-7-15 and 85-5-7.

## SEVENTH DEFENSE

CoreCivic hereby asserts and affirmatively invokes all defenses available to it as set forth in Fed. R. Civ. P. 12(b)(1) through 12(b)(7) for which a good faith legal and/or factual basis exists or may exist on its behalf or in its favor.

## EIGHTH DEFENSE

Plaintiff's claim for punitive damages is in contravention of CoreCivic's rights under each of the following constitutional provisions:

a.   the Commerce Clause of Article I, Section 8 of the United States Constitution;

b.   the Contracts Clause of Article I, Section 10 of the United States Constitution;

c.   the prohibition against *ex post facto* laws embodied in Article I, Section 10 of the United States Constitution;

d.   the Supremacy Clause of Article VI of the United States Constitution;

e.   the Free Speech Clause of the First Amendment of the United States Constitution;

f.   the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

g.   the Takings Clause of the Fifth Amendment of the United States Constitution as applied to the States via the Fourteenth Amendment to the United States Constitution;

h.   the Right of Counsel of the Sixth Amendment of the United States Constitution as applied to the States via the Fourteenth Amendment to the United States Constitution;

i.      The Excessive Fines Clause of the Eighth Amendment of the United States Constitution as applied to the States via the Fourteenth Amendment to the United States Constitution;

j.      the right to Trial by Jury contained in Seventh Amendment of the United States Constitution;

k.      the Equal Protection Clause of the Fourteenth Amendment;

l.      Due process clause of the Mississippi Constitution;

m.      Alternatively, any claim for punitive damages is governed by the substantive and procedural provisions of Mississippi Code § 11-1-65, and CoreCivic affirmatively pleads all available defenses therein.

### NINTH DEFENSE

Because of the lack of clear standards, the imposition of punitive damages against CoreCivic would be unconstitutionally vague and/or overly broad.

### TENTH DEFENSE

No act or omission of CoreCivic or ACCC staff members was malicious, willful, wanton, reckless, outrageous or grossly negligent and, therefore, any award of punitive damages is barred.

### ELEVENTH DEFENSE

The Complaint fails to state a claim upon which relief can be granted for punitive damages.

### TWELFTH DEFENSE

With respect to Plaintiff's demand for punitive damages, CoreCivic specifically incorporates by reference any and all standards or limitations regarding the determination and enforceability of punitive damage awards Defendants stated in *BMW of North America v. Gore*, 116 S. Ct. 1589 (1996) and its progeny including *State Farm v. Campbell,* 538 U.S. 408 (2003).

**THIRTEENTH DEFENSE**

At all times relevant to Plaintiff's Complaint, CoreCivic was engaged in a prototypical governmental function and, correspondingly, CoreCivic is entitled to, and hereby asserts all rights, privileges, and immunities otherwise available to a governmental actor.

**FOURTEENTH DEFENSE**

At all times relevant to Plaintiff's Complaint, CoreCivic acted in good faith, without malice, without reckless disregard, without deliberate indifference, without injurious intent, without evil motive, and is guilty of no wrongful or tortious conduct.

**FIFTEENTH DEFENSE**

CoreCivic affirmatively pleads all defenses and limitations on recovery set forth under Miss. Code Ann. §§ 11-1-60 and 11-1-69.

**SIXTEENTH DEFENSE**

Although CoreCivic does not presently have specific facts in support of additional defenses, CoreCivic wishes to put counsel for Plaintiff on notice that CoreCivic raises all available affirmative defenses set forth in Fed. R. Civ. P. 8, should subsequent discovery disclose facts that support those defenses.

**SEVENTEENTH DEFENSE**

One or more of the claims asserted in this lawsuit may be time-barred by the statute of limitations and/or laches.

**EIGHTEENTH DEFENSE**

CoreCivic affirmatively pleads all defenses available to a defendant pursuant to Miss. Code Ann. § 15-1-36, including but not limited to failure to give proper notice of claim and/or failure to give timely notice of claim.

## NINETEENTH DEFENSE

If facts introduced at trial show that one or more individuals referenced in the Complaint were independent contractors at ACCC, CoreCivic is not vicariously liable for the acts

## TWENTIETH DEFENSE

One or more of the claims asserted in this lawsuit fail because Plaintiff has not sufficiently alleged Mr. Jones's injuries and/or Plaintiff's damages were caused by CoreCivic / ACCC staff members' breach of the acceptable and applicable standards of care for healthcare providers.

## TWENTY-FIRST DEFENSE

CoreCivic affirmatively pleads and invokes all defenses that may be available to it under the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-1, *et seq*.

## TWENTY-SECOND DEFENSE

CoreCivic reserves the right to supplement and/or amend its answer and defenses as discovery progresses.

WHEREFORE, PREMISES CONSIDERED, CoreCivic denies any liability to the Plaintiff; denies that Plaintiff is entitled to any recovery; respectfully requests that this action be dismissed with prejudice; and respectfully requests such other relief as may be appropriate under the circumstances.

Dated: March 22, 2023

DEFENDANT CORECIVIC, INC.

*/s/ Anna Little Morris*
LEM MONTGOMERY, MB # 100686
ANNA LITTLE MORRIS, MB # 105299
Butler Snow LLP
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
Phone: 601-985-4410
Fax:    601-985-4500

lem.montgomery@butlersnow.com
anna.morris@butlersnow.com

ITS ATTORNEYS

**<u>CERTIFICATE OF SERVICE</u>**

I, Anna Little Morris, one of the attorneys for CoreCivic, Inc., do hereby certify that I have this day served a true and correct copy of the foregoing document by filing it using the ECF system which sent notice of such filing to all counsel of record.

SO CERTIFIED this the 22nd day of March, 2023.


*/s/ Anna Little Morris*
Anna Little Morris

68162291.v1